UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES D. MEYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17 CV 801 DDN |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that plaintiff James D. Meyers is not disabled under the Social Security Act and, thus, is not entitled to Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I.     BACKGROUND

Plaintiff was born on December 8, 1955. He protectively filed his application for supplemental security income on February 18, 2014, alleging a disability onset date of February 18, 2014, due to back, left knee, left hand, and mental problems. Plaintiff's application was denied initially and he requested a hearing before an Administrative Law Judge (ALJ).

On March 2, 2016, an ALJ conducted a hearing. However, during the hearing the ALJ decided that a second, supplemental hearing should be held following further, consultative examinations of plaintiff's left knee and his psychological condition. The

second hearing was held on August 31, 2016. On September 23, 2016, the ALJ issued a decision that concluded plaintiff was not disabled. Plaintiff's request that the ALJ's decision be administratively reviewed was denied by the Appeals Council. The ALJ's decision stands as the final agency decision now under review.

### A. Medical Record

Plaintiff has a history of right hand injury dating back to 2007. In November 2007, his right hand was diagnosed as infected. In February 2014, after being caught in a welding machine, plaintiff sustained traumatic laceration and punctures to both of his forearms. He was diagnosed with traumatic cellulitis in both arms.

On April 17, 2014, David McCollister, M.D. excised several linear ulcers from both of plaintiff's forearms. On May 7, 2014, Dr. McCollister removed the sutures and diagnosed a bacterial skin infection. Dr. McCollister referred plaintiff to a dermatologist.

On May 14, 2014, plaintiff visited the St. Joseph Health Center for emergency treatment of swelling and pain in both forearms. He returned to the same emergency room on May 25, 2014, due to increased pain in both arms. He reported he had not followed up with the doctor as directed. The doctor working in the emergency department at that time noted that plaintiff had multiple deep pitting, large ulcerative lesions in both forearms, but nevertheless had normal range of motion and no tenderness. The doctor prescribed hydrocodone-acetaminophen for pain and bactroban ointment.

On June 11, 2014, Wahied Gendi, M.D., began treating plaintiff as his primary care physician. On that day, Dr. Gendi summarized plaintiff's prior accidents as involving a burn to his forearms while using welding equipment, for which he had surgery in April.

On August 13, 2014, on a two-page check-box type form, Dr. Gendi reported his limited functionality opinions that plaintiff could only occasionally carry ten pounds or less, and rarely lift and carry more than 10 pounds; could occasionally twist but rarely stoop, bend, crouch, or climb ladders or stairs; could not reach, handle, or feel more than occasionally, nor use his fingers for fine manipulation more than rarely. (Tr. 406-07).

Later in August 2014, Dr. Gendi noted that there was no clubbing, cyanosis, or edema on plaintiff's extremities and that both forearms were improving. (Tr. 409). On September 2 and October 3, 2014, Dr. Gendi found plaintiff had a normal range of motion with no inflammation, effusion, or deformity. (Tr. 508, 520).

During monthly visits on November 4, 2014; December 5, 2014; and January 8, 2015, Dr. Gendi's findings remained the same as on October 3, 2014, except that he noted plaintiff's forearm ulcer worsened because of a mild skin breakdown. (Tr. 533, 547, 562).

On February 5, 2015, Dr. Gendi's colleague, Idelle Fraser, M.D., examined plaintiff and noted he had no clubbing, cyanosis, or edema in his extremities. She opined he had normal ranges of motion without inflammation, effusion, or deformity, but with some mild skin ulcer and healing fibrous tissue on both forearms. (Tr. 576).

On June 20, 2015, plaintiff went to the St. Joseph Health Center Emergency Room complaining of generalized pain; the examination showed he had normal range of motion and faded scarring. (Tr. 458-60).

### B.  Evidentiary Hearings

On March 2, 2016, an ALJ conducted the first hearing in which plaintiff testified to the following. He lived by himself and had been self-employed in construction. However, he had not been able to work for some years, and his sister helped him pay his monthly bills. In 2014, plaintiff injured his back, helping a friend lift an item. He also burned and cut his arms when he was "playing with" a machine his friend built. Plaintiff testified he first contacted Dr. Gendi on June 11, 2014. Dr. Gendi was his primary treating physician for both of his arm injuries. At the hearing, plaintiff claimed he had a skin issue and his arms were getting worse. Plaintiff suggested he also had some problems with his knees. At the end of the hearing, the ALJ ordered two evaluations, one to examine plaintiff's left knee, back, and infections of the skin; the other was a psychological evaluation. The ALJ stated a second hearing would be ordered once plaintiff had those two evaluations.

On April 25, 2016, at the request of the ALJ, Alan Spivack, M.D., examined plaintiff. Dr. Spivack noted the following. Plaintiff had a history of five fractured fingers in his left hand. Plaintiff has pain in his hands on a daily basis. He complained he could hold a coffee cup with his left hand but not a skillet. The scars on plaintiff's forearms evidenced old cellulitis; there was then no active infection. Dr. Spivack diagnosed plaintiff with both "left hand injury secondary to trauma" and "laceration of both arms secondary to trauma." He opined that plaintiff was limited to lifting or carrying no more than 10 pounds occasionally; and reaching, handling, fingering, feeling pushing, or pulling no more than occasionally. (Tr. 618-28).

Also on April 25, 2016, plaintiff underwent an X-ray, which indicated that his left knee was normal. (Tr. 622). And on April 25, 2016, he underwent a psychological evaluation which indicated an unspecified depressive disorder, with a fair prognosis. (Tr. 637).

The second hearing was held on August 31, 2016. Plaintiff reported no earnings during the last 15 years. He confirmed that he did not go to the wound care clinic on referral after visiting an urgent care and Dr. Gendi treated his arms.

Two medical experts testified. The first, Dr. Victoria Eskinazi, testified about plaintiff's physical impairments, and Dr. David Biscardi testified regarding plaintiff's mental impairments. Dr. Eskinazi opined the only severe physical impairment she could identify was chronic pain syndrome due to narcotic misuse and abuse. Dr. Eskinazi testified that in reaching her conclusion, she considered plaintiff's spine and knee injury mentioned in Dr. Spivack's examination. She testified that in her professional opinion, plaintiff did not medically meet or equal any listing in the Commissioner's list of disabling impairments. She would give plaintiff medium exertional restrictions, with only occasional use of ropes, ladders, and scaffolds. She would not limit plaintiff's pushing or pulling but would limit his exposure to unprotected heights and operational control of moving or hazardous machinery.

The ALJ next posed various hypotheticals to the vocational expert, based on Dr. Eskinazi's testimony. The VE testified that a person with plaintiff's age, education, work

experience, and chronic pain syndrome (with substance abuse and narcotic misuse) would be able to perform several jobs that are available in significant numbers in the national economy. These jobs were linen room attendant, stubber, and checker-in.

The second medical expert, Dr. David Biscardi, then testified about plaintiff's psychological state. He concluded plaintiff suffers from a depressive disorder that restricts him to simple routine and repetitive tasks. The ALJ added this limitation to the hypothetical the VE addressed previously, and the VE testified the additional mental limitation would not affect a person's ability to perform the duties of the three jobs she identified earlier.

### C. ALJ's Decision

On September 23, 2016, the ALJ issued a written decision finding that plaintiff was not disabled under the Social Security Act. The ALJ found that plaintiff had not engaged in substantial gainful activity since the application date and had the following severe impairments: "chronic pain syndrome with a history of being status post multiple fractured vertebrae, status post left hand injury, and depressive disorder." (Tr. 114).

The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments.

At Step Four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c), except that he is limited to "the frequent climbing of ramps and stairs; the occasional climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; avoiding concentrated exposure to the operational control of moving machinery and hazardous machinery, and avoiding all exposure to unprotected heights; and simple, routine, and repetitive tasks." (Tr. 117).

The ALJ considered all of plaintiff's reported symptoms to the extent they are consistent with the objective evidence. He found that, although plaintiff's medically determinable impairments could reasonably be expected to cause some alleged

symptoms, the intensity, persistence, limiting effects of these symptoms claimed by plaintiff are inconsistent with the objective medical evidence and other evidence.

In making his decision, the ALJ stated he accorded "significant weight" to Dr. Eskinazi's opinion. The ALJ found Dr. Eskinazi had adequate opportunity to review the record and, though he disagreed that the evidence of record supported substance abuse or narcotic misuse, the ALJ found Dr. Eskinazi's physical restrictions were supported by the objective medical evidence of record.

The ALJ accorded "little weight" to Dr. Spivack's opinion about plaintiff's limitations, because he found the limitations were inconsistent with the treatment record. Specifically, he noted that Dr. Spivack cited past conditions for which the plaintiff was not seeking treatment during the period at issue.

The ALJ also gave Dr. Gendi's limited functionality opinions "little weight," because the medical records documented primarily normal results: plaintiff had a normal range of motion without inflammation, effusion, or deformity; he had normal and symmetric breath sounds; he had regular heart rhythm; and his mental status was normal.

The ALJ accorded Dr. Biscardi's opinion great weight. The ALJ noted that plaintiff had normal mental status examinations during the relevant period. He credited Dr. Biscardi's opinion that plaintiff was limited to simple, routine, and repetitive tasks due to a depressive order, because of plaintiff's ongoing pain and consistent complaints of depression.

Considering plaintiff's RFC, age, education, and work experience, the ALJ found the VE's testimony was consistent with the information in the Dictionary of Occupational Titles and determined there are jobs in significant numbers in the national economy that plaintiff could perform. Accordingly, the ALJ decided plaintiff was not disabled under the Social Security Act.

## II.     DISCUSSION

Plaintiff argues that the ALJ (1) failed to discuss his left hand injury (or other impairments related to his hands and arms) in his RFC determination; and (2) failed to properly weigh Dr. Gendi's opinions.

### A.     Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, courts must decide whether the decision of the Commissioner is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015).  Substantial evidence is less than a preponderance of the evidence, but sufficient to cause a reasonable mind to accept the Commissioner's decision.  *Id.*  Courts must consider evidence that both supports and detracts from the ALJ's decision.  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).  If the court finds it is possible to draw two inconsistent positions from the record, one of which supports the Commissioner's decision, the court must affirm the agency's final decision.  *Id.*

To be entitled to disability benefits under Title XVI of the Act, a claimant 18 years of age or older must demonstrate he is unable to engage in substantial gainful work in the national economy due to a medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3).  A five-step regulatory framework is used by the Commissioner to determine whether an individual is disabled.  20 C.F.R. § 416.920.  Step One requires the claimant to prove he is not currently engaged in substantial gainful activity.  Step Two requires the claimant to demonstrate he suffers from a severe impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities.  Step Three determines whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If so, benefits

should be granted.  If not, the claimant, in Step Four, bears the burden of proving he is unable to perform his past relevant work.  After the claimant satisfies his burden in Step Four, the burden of proof shifts at Step Five to the Commissioner to demonstrate that the claimant has the RFC to perform work that is available in the national economy and that is consistent with the claimant's age, education, and work experience.  20 C.F.R. § 920(a)(4)(i)-(iv);  *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

### B. The ALJ's Determination of Plaintiff's RFC

Plaintiff argues that, although he presented substantial evidence of the injuries to his arms and hands, the ALJ failed to consider these injuries in determining his RFC.  In addition, he argues the ALJ handled the evidence inconsistently: the ALJ found plaintiff has the severe impairment of chronic pain syndrome with a "status post left hand injury," or a history of left hand injury, but the ALJ did not consider this injury when discussing plaintiff's work limitations.  (Doc. 13 at 7).

A disability claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 416.945(a)(1).  In *McCoy v. Schweiker*, the Eighth Circuit defined RFC as the ability to do the requisite work-related acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real word."  683 F.2d 1138, 1147 (8th Cir. 1982) (en banc), *abrogated on other grounds*, 524 U.S. 266 (1998).  "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2005).  The ALJ should look to medical records, observations of treating physicians and others, a claimants' own descriptions of his limitations, and evidence relating to the claimant's daily activities in determining RFC.  *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).  A claimant's subjective complaints may be discounted, if there are inconsistencies in the evidence considered in its entirety.  *Id.* at 558.  The claimant has the burden of persuasion to prove disability and to demonstrate RFC throughout the RFC inquiry.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Although the ALJ discussed plaintiff's subjective claims as to his hand and arm injuries, the ALJ decided plaintiff's statements about his symptoms' intensity, persistence, and limiting effects were not consistent with the objective evidence. (Tr. 118). The ALJ gave a detailed description of plaintiff's medical treatment and noted that plaintiff's physical signs were mostly normal and his main complaint was upper extremity pain during the relevant period. The ALJ also noted that plaintiff had described daily activities that were not limited to the extent one would expect, given the alleged symptoms. The ALJ then discounted plaintiff's subjective complaints as to his back, left knee, and left hand problems, because they were inconsistent with the medical evidence and other objective evidence. The ALJ further noted that plaintiff's failure to seek medical treatment for his hand injury for a long period was inconsistent with his allegation of disability. *See Milam v. Colvin*, 794 F.3d at 985. The credibility of a disability claimant's subjective complaint is primarily for the ALJ to determine, not the Court. *Baldwin*, 349 F.3d at 558.

Plaintiff argues he presented substantial evidence of injuries to his arms and hands: he had a right hand injury in 2007, he had cellulitis and abscess in his hand, he has a history of fractures in all five fingers in the left hand, and he had bilateral arm injuries followed by surgical repair when his arms were caught in a machine. Regarding plaintiff's left hand, consulting examiner Dr. Spivack noted the following: Plaintiff stated he could hold a cup of coffee in his left hand or use a broom briefly but not hold a skillet or lift overhead. Plaintiff reported that he is right-hand dominant and that his left hand injury did not require surgery and has subsequently healed, but that he has residual decreased range of motion of his fingers and decreased manual dexterity. Dr. Spivack found plaintiff had a history of left hand injury secondary to trauma and diminished finger dexterity, because of decreased range of motion of his fingers, and somewhat reduced range of motion in both wrists.

However, Dr. Spivack also found plaintiff had normal grip strength in both hands, normal upper extremity strength, the ability to fully extend his hand, the ability to make a fist, and the ability to oppose his fingers. Dr. Spivack opined that plaintiff would be able

9

to use his left hand occasionally, up to one-third the time, and to reach, handle, finger, feel, and push or pull. He did not opine that plaintiff's left hand was more limited than his right hand. And he opined that plaintiff could go shopping; travel without a companion; prepare a simple meal and feed himself; care for his personal hygiene; and sort, handle, or use paper files.

Plaintiff argues that the ALJ's severe impairment finding required an analysis of the functional result of his left hand injuries. However, the ALJ did not find that plaintiff's severe left hand impairment involved its functioning, but rather involved chronic pain syndrome. (Tr. 114). And contrary to plaintiff's argument, the ALJ considered plaintiff's left hand in determining the RFC. (Tr. 118). The ALJ determined that the record failed to show how plaintiff had limitations greater than those accommodated by reducing his RFC exertion level to medium. (Tr. 121). First, the ALJ noted plaintiff's left hand injury and complaints, then he stated that after considering the evidence, he did not find that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were consistent with the evidence of record. (Tr. 118). The ALJ noted that Dr. Spivack's one-time examination found plaintiff's finger dexterity to be diminished because of decreased range of motion of his fingers, but that Dr. Gendi determined on several occasions that the range of motion in plaintiff's joints was normal and without inflammation, effusion, or deformity. (Tr. 120-21). The ALJ also looked to plaintiff's activities of daily living, which he found were inconsistent with plaintiff's complaints of disabling symptoms. (Tr. 121). He noted plaintiff could do light housework, shop at the grocery store, write his name, hold a coffee cup, unscrew a loose jar top, fasten buttons, and vacuum or sweep for short periods. (Tr. 121, 636). If an ALJ explicitly discusses the claimant's subjective symptoms and gives good reasons for his findings, the court should defer to the ALJ's judgment. *See Baldwin v. Barnhart*, 349 F.3d at 558.

At the second hearing, the ALJ asked medical expert Dr. Eskinazi whether there was objective medical evidence of record to support the limitations contained in Dr. Spivack's medical source statement. Dr. Eskinazi responded that there was not: "there

are a lot of issues, there are contradictions, there are credibility issues. There are inconsistencies there." (Tr. 156).

Additionally, the ALJ spent several pages discussing the medical records and all of plaintiff's medical treatment. (Tr. 117-22). During the period at issue, while plaintiff frequently complained of arm pain or skin issues (Tr. 398, 406, 409, 411-12, 427, 429, 436, 438, 458-60, 520, 533, 547, 562), there are very few complaints related to his left hand, and plaintiff sought no significant treatment for his left hand. The ALJ may consider a lack of objective medical evidence to support a claimant's allegations, as the ALJ did here. *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004). Furthermore, plaintiff's testimony at the first hearing in March 2016 mentioned only his arm problems, not his hand problems. (Tr. 139).

The ALJ's RFC finding is supported by substantial evidence. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 416.967(c). The only objective medical evidence supporting plaintiff's claim of limitations in his left hand is Dr. Spivack's finding that he had limited range of motion in his wrists and left fingers. (Tr. 624). The ALJ's RFC finding properly accounted for these restrictions. Any loss of use in plaintiff's left hand is accommodated by the ALJ's decision that plaintiff is limited to medium work. The evidence does not reveal that plaintiff is more limited by this condition than the ALJ determined in his RFC finding.

### C. Weighing of Dr. Gendi's Opinion

Plaintiff also argues that the ALJ's weighing of Dr. Gendi's limited functionality opinions conflicts with recent Eighth Circuit precedent. The ALJ accorded "little weight" to Dr. Gendi's opinion, because it was not consistent with other evidence in the record. (Tr. 122). The ALJ specifically noted that Dr. Gendi's own treatment records showed normal signs throughout the relevant period, and plaintiff's treatment records did not indicate someone with sedentary limitations. (Tr. 122)

Plaintiff argues that, although Dr. Gendi's limited functionality opinions may not be entitled to controlling weight, because they are inconsistent with and thus not supported by the treatment record, the ALJ's evaluation of them was at odds with the Eighth Circuit's holding in *Papesh v. Colvin*, 786 F.3d 1126 (8th Cir. 2015). This Court disagrees.

In *Papesh* the Eighth Circuit stated the following regarding the opinions of treating physicians:

> The ALJ must give "controlling weight" to a treating physician's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.
>
> Even if the treating physician's opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight. It may have ["]limited weight["] if it provides conclusory statements only, or is inconsistent with the record. The ALJ may discount or even disregard the opinion where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.

786 F.3d at 1332 (internal quotation marks and citations omitted). *See also* 20 C.F.R. § 416.927(c)(1)-(6).

More specifically, in *Papesh* the ALJ gave "great weight" to one expert (Dr. Larson), but "did not give 'great weight' to the opinions of Dr. Cash (because 'inconsistent with the overall evidence of record' and two other reasons); Dr. Danielson ('inconsistent with [his] own treatment notes' and appears 'based on the claimant's subjective assertions of pain'); and Dr. Horozaniecki (lacking 'any significant objective medical evidence')." 786 F.3d at 1131. Drs. Cash and Danielson were Papesh's treating physicians. The Court of Appeals assumed without finding that the ALJ correctly decided not to give Dr. Danielson's opinion controlling weight as her treating physician. However, the Court observed that the ALJ gave *no* reason for giving Dr. Danielson's opinion "non-*substantial* weight." *Id.* The Court ruled that the ALJ erred in not assigning their opinions "substantial weight." *Id.*

In the case at bar, the ALJ expressly assigned Dr. Gendi's limited functionality opinions "little weight," not just "non-controlling" weight, as plaintiff argues. And the ALJ gave a legally appropriate reason for the "little weight" assessment, *i.e.*, Dr. Gendi's opinions were internally inconsistent and were not supported by the treatment record. (Tr. 122, 156, 406-07). Further, Dr. Gendi began treating plaintiff in June 2014 and issued his limited functionality opinions only two months later, in August 2014. In September and October 2014, normal findings were recorded. (Tr. 406-07, 508, 520). The ALJ did not err in discounting Dr. Gendi's opinions and provided sufficient reasons to both consider them non-controlling and to give them only limited weight.

### III.    CONCLUSION

For the reasons discussed above, the decision of the Commissioner of Social Security is affirmed. A separate Judgment Order is filed herewith.

   /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 31, 2018.